# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9843 | **DATE** | January 22, 2003 |
| **CASE TITLE** | Sears Roebuck v. Menards | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion in limine to exclude the survey and testimony of Dr. Kamins [110-1] is granted. Status is set for February 5, 2003 at 11:00 am to set the case for trial. ENTER MEMORANDUM OPINION.

(11)    [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| X | Notices MAILED by judge's staff. | | | JAN 24 2003 | | 160 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to _____ | | 03 JAN 23 PM 5:57 | date mailed notice | | |
| KAM | courtroom deputy's initials | | Date/time received in central Clerk's Office | KAM mailing deputy initials | | |

(Reserved for use by the Court)

01-9843.031-JCD                                              January 22, 2003

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SEARS, ROEBUCK AND CO.,           )
                                  )
        Plaintiff,                )
                                  )
        v.                        )    No. 01 C 9843
                                  )
MENARD, INC.,                     )
                                  )
        Defendant.                )

**DOCKETED**
**JAN 2 4 2003**

## MEMORANDUM OPINION

Before the court is defendant's motion in limine to exclude the survey and expert testimony of Dr. Michael A. Kamins. For the reasons stated below, defendant's motion is granted.

## BACKGROUND

Plaintiff Sears, Roebuck and Co. ("Sears") filed this action against defendant Menard, Inc. ("Menard") for federal trademark infringement and related claims. Menard asserted several counterclaims for declaratory judgment.[1]

Sears claims that Menard infringed its service marks "SEARS. WHERE ELSE?" and "WHERE ELSE?" by using the phrase "WHERE ELSE?" in certain of Menard's radio and television advertisements that aired in late 2001. Sears's theory is that Menard's use of the "WHERE

---

[1] Menard's motion to dismiss its abuse of process counterclaim was granted on September 18, 2002.



ELSE?" slogan confuses consumers into believing that Sears and Menard are affiliated.

At trial, Sears intends to offer the expert testimony of Dr. Michael A. Kamins, who designed and conducted a survey regarding possible consumer confusion. Menard now moves *in limine* to exclude the survey and expert testimony of Dr. Kamins.

## DISCUSSION

Consumer survey results must be presented through experts. Under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the court must act as a "gatekeeper" to ensure that expert testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. <u>Daubert</u> requires the court to ensure that expert testimony is "not only relevant, but reliable." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999) (quoting <u>Daubert</u>, 509 U.S. at 589). "Courts have generally found consumer survey evidence admissible under <u>Daubert</u> if a qualified expert testifies that the survey was conducted in a proper manner, but that will not always be the case. . . . Expert testimony concerning survey results may not be reliable if the survey format does not accurately gauge consumer confusion between the marks at issue." <u>Simon Property Group L.P. v. MySimon, Inc.</u>, 104 F. Supp. 2d 1033, 1040 (S.D. Ind. 2000) (citations omitted).

Moreover, Rule 403 requires us to consider the probative value of a survey in relation to circumstances such as the danger of

unfair prejudice, confusion of the issues, misleading the jury, or waste of time. Methodological deficiencies often go to the weight rather than to the admissibility of a survey, but if the flaws are sufficiently serious, "the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial." Simon Property Group, 104 F. Supp. 2d at 1039.[2]

Menard contends that Dr. Kamins's survey (the "Kamins Survey") is so flawed that we should exclude it from evidence. Menard first argues that the survey conditions failed to replicate actual marketplace conditions, in two ways: first, respondents were exposed to only 8- or 9-second portions of the parties' 30-second television commercials and 10-second radio advertisements that contained the phrase "WHERE ELSE?"; and second, the ads were shown consecutively, making the survey little more than a word association test.

We agree with Menard that the survey distorted marketplace conditions by taking the advertisements out of context. We are primarily concerned with the fact that respondents were presented

---

[2] The court in Simon Property Group also noted, "the vast majority of reported cases dealing with problematic survey evidence have involved injunction hearings or bench trials. In such cases, the safest course for the trial judge is to admit the evidence and to treat the criticisms as going to the weight of the evidence." In a jury trial, on the other hand, "[t]he court has a responsibility to the jurors not to waste their time or to make their task unduly difficult by admitting evidence that is likely to be complex and time-consuming . . . when it offers essentially nothing of real probative value. Rule 403 was written for just this sort of case." 104 F. Supp. 2d at 1039 n.3. Like Simon Property Group, the instant case is scheduled for a jury trial.

with mere clips rather than the entire commercials. "While survey evidence is sometimes said to be evidence of 'actual' confusion, it is so only to the extent that the survey mirrors the real world setting which can create an instance of actual confusion." 3 McCarthy on Trademarks § 23:2.1, at 23-13 (4th ed. 2002). Deleting a portion of the commercials presented to respondents had the effect of eliminating two verbal references and one visual reference to "Menards" from the television commercial and one verbal reference to "Menards" from the radio advertisement. It also had the effect of not allowing respondents to see that the Menards advertisements made no reference whatsoever to "Sears." In other words, important cues regarding affiliation or lack of affiliation between the parties were removed from the commercials. There was no reason *not* to show respondents the entire commercials, each of which was less than a minute long.

Sears argues that "consumers often take in only portions of broadcast commercials" and that they do not "watch television or listen to radio in a sterile environment free from distraction and consume every commercial they are exposed to in its entirety." (Plaintiff's Response at 17-18.) That may be true, but the survey respondents here were not shown random portions of the commercials at issue. Rather, they were shown only the specific portions of the commercials containing the phrase "WHERE ELSE?". The relevant material is that which Menard actually introduced into the

- 5 -

marketplace, which consisted of 30-second television commercials and 10-second radio advertisements—not discrete portions of that material containing certain content.[3]

Menard also maintains that the Kamins Survey asked respondents inappropriate leading questions. The survey questions relating to the substance of the commercials were as follows:

> 10. Which company or organization do you believe is the sponsor of the first commercial?
> 11. Which company or organization do you believe is the sponsor of the second commercial?
> 12. What are some of the major differences when comparing the first commercial with the second?
> 13. What are some of the major similarities when comparing the first commercial with the second?
> 14. After having heard these commercials, do you believe that the two sponsors are associated, affiliated or connected in any fashion with each other?
> 15. Should either sponsor have asked permission or approval of the other before it ran the commercial?
> 16. Does it appear to you that one company borrowed the slogan "where else" from the other?

(Plaintiff's Response, Ex.D, Expert Report of Dr. Michael A. Kamins, App. A, at 1-2.) Menard contends that question 16 was inappropriate because it pointed out to respondents the fact that the phrase "WHERE ELSE?" appeared in both commercials, even if they had not noted it in response to previous questions. We agree that question 16 suggested the similarity to respondents rather than testing whether respondents perceived it themselves. The question

---

[3] Questions 12 and 13 of the Kamins Survey, calling for "differences" and "similarities" between the commercials, would be of no use to the jury in this case because any comparisons would relate only to these extracts from the advertisements rather than to the entirety of the materials Sears and Menard were using.

thus created an improper "demand effect." See Simon Property Group, 104 F. Supp. 2d at 1048 ("demand effects" bias a survey "by suggesting to respondents, at least implicitly, that they should believe there is at least some sort of relationship between the different items when the possibility might not even have occurred to the vast majority of consumers who see the items").

Another major flaw of the Kamins Survey is that it failed to ask respondents a very important question--namely, a follow-up to question 14 ("After having heard these commercials, do you believe that the two sponsors are associated, affiliated or connected in any fashion with each other?"). McCarthy discusses the rationale for the necessity of this follow-up question as follows:

> [Questions eliciting responses regarding both source confusion and confusion as to sponsorship, affiliation and connection] should be followed up by the important question: 'Why do you say that?' Often, an examination of the respondents' verbatim responses to the 'why' question are the most illuminating and probative part of a survey, for they provide a window into consumer thought processes in a way that mere statistical data cannot.

5 McCarthy on Trademarks § 32:175, at 32-287 (4th ed. 2002); see also ConAgra, Inc. v. Geo. A. Hormel & Co., 784 F. Supp. 700, 725 (D. Neb. 1992) ("The '[w]hat makes you say that?' question is a typical question designed to isolate, and therefore explain, the real thought processes of the respondent who evidences confusion. In other words, this type of question is designed to determine whether a person is confused for relevant trademark reasons or for some other unrelated and therefore irrelevant reason.

Well-designed studies typically employ the '[w]hat makes you say that?' question or some variation.")

As Menard points out, the alleged confusion here would be relevant only if it were caused by Menard's use of the phrase "WHERE ELSE?". The Kamins Survey failed to determine the reason(s) why those respondents answering question 14 in the affirmative believed that Sears and Menard were affiliated. This follow-up question is critical, given the unique factual situation here, in which both Sears's and Menard's use of the phrase "WHERE ELSE?" was used in conjunction with the store name, so that the slogan was an identifier (ex., "Sears. Where else?" and "Where else? Menards.").

The Kamins Survey improperly distorted marketplace conditions by lifting portions of the commercials out of context; it contained a highly leading question; and it failed to ask respondents a crucial state-of-mind question regarding perceived association. It did not accurately gauge likelihood of confusion and thus fails to meet the standards set forth in Daubert. The Kamins Survey is also excluded under Rule 403 because the results are likely to create unfair prejudice, confuse the issues, waste time, and, most importantly, mislead the jury.

## CONCLUSION

For the foregoing reasons, defendant Menard, Inc.'s motion in limine to exclude the survey and expert testimony of Michael A. Kamins is granted.

DATE:     January 22, 2003


ENTER:    _____

          John F. Grady, United States District Judge